UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOUGLAS BERLENT,
    Plaintiff,

v.

FOCUS FEATURES, LLC, THE VERVE
MUSIC GROUP, UNIVERSAL MUSIC &
VIDEO DISTRIBUTION CORP.,
BORDERS GROUP, INC., BEST BUY,
INC., AND DEL MAR PRODUCTIONS, LLC,
    Defendants.

06 Civ. 2834 (SCR)

MEMORANDUM
OPINION

---

**STEPHEN C. ROBINSON, United States District Judge:**

  Douglas Berlent ("Plaintiff") commenced this action against Focus Features, LLC, The Verve Music Group, Universal Music & Video Distribution Corp., Borders Group, Inc., Best Buy Co., Inc., and Del Mar Productions, LLC ("Defendants"), alleging that the theme song from the movie "Brokeback Mountain," which is entitled "The Wings," violates Plaintiff's copyright for his song "Slow Dance."

  Plaintiff seeks to enjoin the continued sale and distribution of the "Brokeback Mountain" DVD, the showing of the movie in any theater throughout the world, the sale and distribution of the move soundtrack and any further use of the song "The Wings" by Defendants. Plaintiff wants Defendants to recall all DVDs, CDs, cassette tapes, and other recordings that contain "The Wings."[1] This relief is requested on the theory that the movie, the DVD, and CD all contain the song "The Wings," which does not appropriately credit Plaintiff as its composer. This Court finds that Plaintiff has failed to demonstrate any irreparable injury he would suffer – which he has not already suffered – if a preliminary injunction does not issue because any market confusion on the issue of the true composer of the song "The Wings" had already been created long before Plaintiff brought his lawsuit.

---

[1] Although he does not specify, presumably Plaintiff's recall request is a demand that the DVDs and CDs be removed from the shelves of retail stores and not from consumers who have already purchased the recordings (it would be particularly hard to explain to consumers why if their CD or DVD "ain't broke," they must bring it back).

## I. Background

"Brokeback Mountain" is an epic love story set in the American west during the summer of 1963 and tells the story of two young men - a ranch-hand and a rodeo cowboy - who unexpectedly forge a complicated lifelong relationship and a decades-long love affair that they try to hide from the world. The movie, based on a story by E. Annie Proulx, generated considerable attention and anticipation before and after the nationwide release of the movie trailer in August 2005. The trailer featured the song "The Wings" prominently as a backdrop for the action. On or about November 1, 2005, the movie's soundtrack containing "The Wings" was released. On December 9, 2005, the movie "Brokeback Mountain" was released to much critical acclaim.[2] Because of its groundbreaking content the movie has also become the source of many jokes and parodies. Typically, the song "The Wings," is used as the musical theme in such humorous efforts. On March 5, 2006, when Gustavo Santaolalla[3] won the Oscar for Best Achievement in Music Written for Motion Pictures (commonly referred to as Best Original Score), the orchestra erupted in a triumphant strain from "The Wings." Later, in advertising the April 4, 2006 release of the "Brokeback Mountain" DVD,[4] the song "The Wings" was again used as a backdrop for the excerpted action.

Plaintiff is a professional musician and a graduate of Yale University where he studied music. In 1994, he composed music for an album entitled "Music for Lovemaking," a compendium of instrumental and vocal music specifically designed to provide an ambience conducive to relaxation and heightened sensitivity, setting a mood for romance.[5] Plaintiff copyrighted "Music for Lovemaking" in 1994, under registration number SR-188-272. One of the songs on this album, "Slow Dance," was also copyrighted in 1994, under registration number PAu-1-844-800. According to Plaintiff, "Music for Lovemaking" has sold over 300,000 copies through direct sales from advertising in magazines such as Playboy and through his appearances on radio and television programs.

Plaintiff asserts that he is legally blind and generally does not go to movie theaters to watch movies. Plaintiff says that despite the media advertising and talk show frenzy that accompanied the release of "Brokeback Mountain," he remained unaware of the inclusion of the song "The Wings" in the movie and its similarities to his song "Slow

---

[2] In addition to winning "Best Picture" honors from the Hollywood Foreign Press Association (the Golden Globe Award), the Broadcast Film Critics and the New York Film Critics Circle, the movie received eight Oscar nominations including: Best Picture, Best Director, Best Screenplay and Best Achievement in Music Written for Motion Pictures (Original Score).

[3] Gustavo Santaolalla is an Argentine musician and composer who wrote the score to the movie "21 Grams" and contributed music to the movie "Collateral" among others. In 2003, he won five Latin Grammy awards.

[4] The "Brokeback Mountain" DVD allegedly sold 1.4 million copies on its first day of release.

[5] In addition to "Slow Dance", "Music for Lovemaking's" musical exhibition includes: "The Man," "The Woman," "The Primal Chant," "The Perfect Love," and culminates with "Afterglow."

Dance" until sometime in mid-March 2006 (more than four months after the movie's theatrical release). He says that he became aware of the existence of the song "The Wings" when he heard a television commercial, presumably touting the upcoming release of the DVD. Plaintiff brought this lawsuit approximately one month later, on April 11, 2006, one week after the release of the "Brokeback Mountain" DVD.

## II. Discussion
### A. Preliminary Injunction Standard

A preliminary injunction is an extraordinary measure that should not be routinely granted. *See, e.g., Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). This severe and drastic remedy is available only when the moving party can demonstrate "'(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'"[6] *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)).

### B. Irreparable Harm

"'[W]hen a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed.'"[7] *MyWebGrocer, LLC*, 375 F.3d at 193 (quoting *Merkos L'inyonei Chinuch, Inc.*, 312 F.3d at 96). This presumption exists "because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways." *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994). That presumption, however, "'falls when opposing evidence is offered.'" *Clonus Associates v. DreamWorks, LLC*, 417 F. Supp.2d 248, 251 (S.D.N.Y. 2005) (quoting *Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F. Supp. 356, 359

---

[6] The parties did not address whether this Court should consider Plaintiff's request under the mandatory preliminary injunction standard, which is a higher burden for Plaintiff. A "moving party must make a 'clear' or 'substantial' showing of a likelihood of success where (1) the injunction sought 'will alter, rather than maintain, the status quo' - i.e., is properly characterized as a 'mandatory' rather than 'prohibitory' injunction; or (2) the injunction sought 'will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Jolly v. Coughlin*, 76 F.3d 468, 474 (2d Cir. 1996) (quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)). Because Plaintiff seeks a preliminary injunction that would, *inter alia*, force the Defendants to recall all DVDs, CDs, cassette tapes, and other recordings that contain "The Wings," such an injunction would not retain the status quo but alter it. Accordingly, Plaintiff is seeking a mandatory injunction. Plaintiff, however, has not shown a clear or substantial likelihood of success on the merits. Therefore, even if this Court were to conclude that Plaintiff has shown irreparable harm, his request for an injunction would still be denied.

[7] "A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying." *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985); *see also NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 476 (2d Cir. 2004).

(S.D.N.Y. 1992)). "If a defendant successfully rebuts the presumption, the burden of proof reverts to plaintiff to prove irreparable harm." *Id.*

Plaintiff brought this case eight months after the movie trailer was released, five months after the soundtrack was released, four months after the movie opened, and more than one month after Santaolalla won the Oscar for Best Original Score. As a result, the harm Plaintiff seeks to prevent has already occurred.[8] As noted above, the irreparable harm presumption exists "because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways." *Fisher-Price, Inc.*, 25 F.3d at 124. Here, the confusion has already been created. The movie trailer has been released, the soundtrack has been released, the movie has opened, and Santaolalla has already won recognition and acclaim as the composer of "The Wings." *See, e.g., Clonus Associates*, 417 F. Supp.2d at 254-55, 256-57 (S.D.N.Y. 2005) (finding no irreparable harm in part because whatever harm the distribution of an allegedly infringing movie would cause, it had already occurred as that movie had been on the market for approximately three months and while recognizing "the importance of the general presumption that copyright infringement creates irreparable harm," concluding that "under the peculiar circumstances presented here, plaintiff has failed to prove that it is entitled to a preliminary injunction, which is 'one of the most drastic tools in the arsenal of judicial remedies'" (quoting *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985))); *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp.2d 277, 282 (S.D.N.Y. 1998) ("[A] preliminary injunction here would be very much like locking the barn door after the horse is gone."). In his moving papers and at oral argument, Plaintiff did not identify any irreparable harm he would suffer that has not already occurred.[9] Indeed, in his initial memorandum, Plaintiff argues that he "has been placed in the intolerable position of not receiving credit for a work he conceived and for which someone else received an Oscar." (Pl.'s Mem. at 3.) While there is no question that if Defendants infringed Plaintiff's copyright, Defendants will have created confusion in the marketplace that damaged Plaintiff, issuing a preliminary injunction now would not remedy that confusion or lessen that damage.

In fact, the issuance of a preliminary injunction today would not lessen any confusion in the marketplace. Given that the movie, the DVD, and the CD soundtrack have already been released and Santoalalla has already received public recognition as the composer of the music, the only way for Plaintiff to lessen or ameliorate the confusion in

---

[8] Defendants argue that Plaintiff fails to explain the eight month delay between the nationwide distribution of the movie trailer and April 11, 2006, the date he filed his complaint. It is "well established that 'any such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.'" *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp.2d 277, 281 (S.D.N.Y. 1998) (quoting *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995)). Plaintiff, however, did posit an explanation for the delay. Plaintiff has contended that he does not regularly go to the movies because he is legally blind, and, therefore, did not hear "The Wings" until he heard a television commercial several months later.

[9] At oral argument, Plaintiff's counsel made much of the argument that this case was like an ancient forest that had been partially destroyed by fire. He asserted that a preliminary injunction would save the remaining trees. Plaintiff's counsel, however, did not identify what "trees" remain for the preliminary injunction to protect. All of the harms that Plaintiff's counsel identified have already been inflicted.

4

the marketplace is for his rights to be vindicated at trial. It is only after a judgment at trial that Plaintiff can announce to the marketplace in any meaningful way that, in fact, he composed the acclaimed song.

Plaintiff, therefore, has failed to demonstrate any irreparable injury he would suffer that he has not already suffered if a preliminary injunction does not issue. Even assuming that Plaintiff is entitled to a presumption of irreparable harm, Defendants have sufficiently rebutted that presumption.

Finally, and perhaps most importantly, Plaintiff admitted that he would not be able to post the substantial bond that would be required if this Court granted his request for a preliminary injunction.

### III. Conclusion

For the reasons set forth above, Plaintiff is not entitled to a preliminary injunction.

*It is so ordered.*

Dated: White Plains, New York
       June 8, 2006

Stephen C. Robinson, U.S.D.J.